Pape *v.* Hughes, Appellant.

Argued January 5, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Carl G. Herr,* with him *Donald G. Oyler,* for appellants.

*Richard A. Brown,* with him *Brown, Swope & Mac-Phail,* for appellee.

OPINION BY MR. JUSTICE EAGEN, March 15, 1960:

The appellee (plaintiff in the court below) on June 25, 1947, by written agreement of lease granted to one H. G. Hess the sole and exclusive right and privilege of mining, removing and marketing of minerals and material, including gravel, sand, clays, stone and ore from a property owned by her in Adams County, for a period of five years, *"and for such additional longer period as the hereinbefore mentioned minerals and materials may be found on the premises . . . in sufficient quantity as to be profitable commercially to remove, the duration of said extended period to be determined by the"* grantee, (Italics supplied) *". . .* for the purpose of mining, digging, dredging, drilling, blasting and removing said minerals and materials deemed useful and/or marketable by the" grantee. By subsequent assignments the rights of Hess vested in the appellants (defendants in the court below).

The contract provided for payment of a royalty of 50 cents a ton for material removed, but did not require payment of a minimum amount of royalties, nor was there any minimum production required.

The appellee-owner instituted this action to quiet title on May 9, 1957, contending that the lease had expired on June 24, 1952, and all rights granted thereunder were abandoned. The appellants-lessees countered that there had been no abandonment; that the leased land contained a vast deposit of minerals and clays in sufficient quantity to be profitable commercially to remove; and that, therefore, the rights under the lease to mine the minerals until exhaustion continues.

The issue, by agreement, was tried without a jury before the Honorable W. C. SHEELY, who concluded,

as a matter of fact, that there had been no abandonment, but that at the end of the five year period specified in the lease, minerals were not found on the premises in sufficient quality and quantity to be removed profitably for commercial purposes and that, therefore, the lease expired on June 24, 1952. We are concerned with an appeal from that decision.

Needless to point out, the findings of fact of the trial judge, if adequately supported by the evidence, are as conclusive on appeal as those that are necessarily included in the verdict of a jury: *Girard Trust Corn Exchange Bank v. Alker,* 392 Pa. 47, 139 A. 2d 901 (1958).

An examination of the record discloses more than ample facts and circumstances (elicited through the testimony of appellants' own witnesses) to support the court's ruling. Inter alia, it appears that in 1948 the lessees extensively core-drilled about one-half acre of the land involved to a depth of approximately 174 feet, and removed the overburden in this area; that the mineral known as pyrophyllite was discovered; that the only other known deposit of this ore in the United States is in the State of North Carolina; that the drilling indicated the existence of several millions of tons of the ore in the entire tract, which mineral could be removed by strip-mining. It was admitted that the defendants never intended to prosecute the mining operation themselves, but intended to arrange for such operations to be carried out by an established mining company. In an endeavor to effectuate this plan, efforts were continuous in contacting many large nationally known companies, which received samples, tested and evaluated the ore. An expert representative of one of these companies testified that, at least for the present, his company was not interested in operating the mine because, while the premises undoubtedly contained a large quantity of the ore, it was not

of the extreme high grade quality necessary for its industry (ceramics). He further explained that the bulk of the existing deposit contained sericite (a mineral of low grade), and that before the sale of the ore would be profitable an extensive marketing program to gain acceptance would be necessary. Other testimony revealed that it would take an investment of approximately one million dollars to process the deposit before sale, and one witness indicated that the royalty payments required under the lease were excessive and did not warrant such a large capital investment. Aside from a small amount of mining and removal of the mineral in the year 1948 (184 tons), nothing further was done in the following years to mine the premises or to remove any of the existing deposit; nor is there any indication of such operations taking place in the foreseeable future. Neither has anyone been found who is sufficiently interested to indicate any such intention.

While the record indicates that a large deposit of minerals, consisting of pyrophyllite and sericite, exists on the premises involved, the court below pointed out: "The condition upon which the lease was to be extended beyond the initial five year period, however, does not depend alone upon the quantity of minerals found; it must be found in 'sufficient quantity as to be profitable commercially to remove' and, . . . that condition must have existed in 1952. Whether it would be commercially profitable to remove any quantity of materials would depend upon whether there was a market for that material at a price sufficient to pay the required royalty, the cost of removal and processing, the cost of transportation, etc., and to allow a reasonable profit. Under the defendants' own statement of the testimony there was no ready market for the minerals found on the plaintiff's land because of the rarity of pyrophyllite and because the bulk of the deposit con-

tained sericite, and a marketing program would have to be undertaken to gain wide spread acceptance of the mineral before a large company would undertake processing the deposit."

Defendants argue that the words in the lease "deemed useful and/or marketable" indicate that the merchantability of any minerals, if discovered, was solely to be determined by the lessees. We read no such meaning in the term clause of the lease. Any such interpretation would lead only to a ridiculous and an unreasonable situation. If this reasoning were followed through to its logical conclusion, the mere discovery of a mineral on the premises would, without more, extend the lease indefinitely (or until the lessees decided otherwise), regardless of the fact that the mineral found could not be mined and removed profitably. This was clearly not the intention of the parties to the contract and a study thereof in its entirety clearly so indicates.

The issue in this case was purely one of fact and the lower court decided it correctly.

The judgment is, therefore, affirmed.